UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF TENNESSEE
COLUMBIA DIVISION

| | |
|---|---|
| JOE E. STRAWTHER | ] |
| | ] |
| v. | ] No. 1-07-0079 |
| | ] Judge Haynes |
| CHERRY LINDAMOOD, et al. | ] |

M E M O R A N D U M

Plaintiff, Joe E. Strawther, a state prisoner formerly incarcerated at South Central Correction Center ("SCCC")[1] in Clifton, Tennessee, filed this pro se action under 42 U.S.C. § 1983 against Defendants, Clyde Weaver, Sean Brantley and Cherry Lindamood, asserting claims for violating his rights under the Eighth Amendment to the United States Constitution. Plaintiff alleges that Defendants subjected him to cruel and unusual punishment by closing the flap of his cell door, known as a "pie flap," on his finger. Plaintiff also alleges a failure to train claim.

Before the Court is the Defendants' motion for summary judgment (Docket Entry No. 20) and the pro se Plaintiff's affidavit (Docket Entry No. 31) and his statement of undisputed facts (Docket Entry No. 32).[2] The Defendants, Correction Officers Clyde Weaver

---

[1]South Central Correctional Center is operated by Corrections Corporation of America ("CCA") under contract with the State of Tennessee. See http://correctionscorp.com/facility/59/

[2]Although these filings were untimely, pursuant to Local Rule 7.01(b) and 56.01(a), (c), and Plaintiff's statement of undisputed

and Sean Brantley, assert that they acted in a good-faith effort to maintain or restore discipline, and that they did not act with a malicious or sadistic intent to cause Plaintiff harm. The Defendant, Warden Cherry Lindamood, asserts that she had no active involvement with Plaintiff concerning this incident, and that SCCC has a Constitutionally adequate training program that both Weaver and Brantley successfully completed prior to this alleged incident.

Plaintiff responds that he apologized for his disruptive behavior and the pie flap was slammed on his hand without warning.

For the reasons set forth below, the Court concludes that genuine issues of material fact exist as to Plaintiff's excessive force claim, but his other claims should be dismissed.

## I. REVIEW OF RECORD[3]

Plaintiff alleges that on July 19, 2007, Case Manager Heather Hunt, Unit Manager William Boyd and Defendant Sean Brantley were

---

facts does not conform to Local Rule 56.01(c), the Court will exercise its discretion and liberally consider these late-filed documents as Plaintiff's response to Defendants' motion for summary judgment.

[3]Upon a motion for summary judgment, the factual contentions are viewed in the light most favorable to the party opposing the motion for summary judgment. Duchon v. Cajon Co., 791 F.2d 43, 46 (6th Cir. 1986). As will be discussed infra, upon the filing of a motion for summary judgment, the opposing party must come forth with sufficient evidence to withstand a motion for directed verdict, Anderson v. Liberty Lobby, 477 U.S. 242, 247-52 (1986), particularly where there has been an opportunity for discovery. Celotex Corp. v. Catrett, 477 U.S. 317 (1986). Because material factual disputes exist, this section does not constitute a findings of fact under Fed.R.Civ.P. 56(d).

2

distributing commissary orders to inmates. (Docket Entry No. 1), Complaint at p. 5. Plaintiff admits that he became "upset and loud" and cursed after he was informed that he did not receive all the commissary items that he had ordered because of insufficient funds in his commissary account. Id. Plaintiff cursed because he did not receive his items, but did not direct his words at Boyd and apologized to Boyd, who accepted. (Docket Entry No. 32, Plaintiff's statement of undisputed facts, ¶¶ 8-9). According to Plaintiff, Defendant Clyde Weaver then walked up alongside his cell and without warning quickly shut the pie flap, smashing his finger. Id. ¶ 10.

Plaintiff's medical records reveal that he suffered a small abrasion on his right little finger. Id., Exhibit No. 5. His finger was treated initially with hydrogen peroxide and a band aid. Id. However, Plaintiff continued to complain about the pain. Further treatment included a splint and an injection of Dexamethasone, an anti-inflammatory, into his finger. Id.

Defendants dispute Plaintiff's account. According to Brantley and Weaver, Plaintiff became very disruptive upon learning of the reason for the denial of his commissary items and that he continually stuck his hands outside of the pie flap. (Docket Entry No. 27), Defendants' statement of undisputed facts, ¶¶ 5-6. Defendants contend that because of Plaintiff's disruptive behavior and because on different occasions Plaintiff had thrown some type

3

of liquid at Brantley and Weaver through the pie flap, Brantley instructed Weaver to close the pie flap on Plaintiff's cell door. Id., ¶¶ 7-8. Defendants assert that prior to instructing Weaver to close the pie flap, Brantley directed Plaintiff to remove his hands from the pie flap and keep them in the cell and warned him that force might be used against him if he continued to disobey Brantley's directives. Id., ¶ 10.

According to Defendants, once Plaintiff removed his hands from the flap, Weaver slowly began to close the flap when Plaintiff suddenly shoved his hand through the flap, resulting in Plaintiff's finger being pinched. Id., ¶¶ 11-13. Defendants assert that although Plaintiff's finger appeared to have received a very minor injury, medical personnel were summoned to his cell to examine his finger and rendered medical treatment to him. Id., ¶ 14. Defendants assert that Brantley directed Weaver to close the pie flap to maintain order and to prevent Plaintiff, who was upset and behaving disruptively, from posing any security concerns to those present or to Plaintiff's own safety and that Weaver did not intend to close the flap while Plaintiff's hand was still in the flap. Id., ¶¶ 15-16.

In response, Plaintiff asserts that if Brantley did order him to remove his hand from the flap he did not hear him. (Docket Entry No. 32, Plaintiff's statement of undisputed facts, ¶¶ 12, 19). Plaintiff further asserts that he did not have a history of

4

throwing any objects or liquid through the pie flap prior to the July 19, 2007, incident, but that he did throw Kool Aid on Weaver one week later on July 26, 2007. <u>Id</u>., ¶¶ 25-27; Exhibit No. 4.

## II. CONCLUSIONS OF LAW

"The very mission of the summary judgment procedure is to pierce the pleadings and to assess the proof in order to see whether there is a genuine need for trial." Advisory Committee Notes on Rule 56, Federal Civil Judicial Procedure and Rules (West Ed. 1989). Moreover, "district courts are widely acknowledged to possess the power to enter summary judgment *sua sponte*, so long as the opposing party was on notice that [he] had to come forward with all of [his] evidence." <u>Celotex Corp. v. Catrett</u>, 477 U.S. 317, 326 (1986); <u>accord</u>, <u>Routman v. Automatic Data Processing, Inc.</u>, 873 F.2d 970, 971 (6th Cir. 1989).

In <u>Anderson v. Liberty Lobby, Inc.</u>, 477 U.S. 242 (1986), the United States Supreme Court explained the nature of a motion for summary judgment:

> Rule 56(c) of the Federal Rules of Civil Procedure provides that summary judgment "shall be rendered forthwith if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." By its very terms, this standard provides that the mere existence of <u>some</u> alleged factual dispute between the parties will not defeat an otherwise properly supported motion for summary judgment; the requirement is that there be no <u>genuine</u> issue of <u>material</u> fact.

5

> As to materiality, the substantive law will identify which facts are material. Only disputes over facts that might affect the outcome of the suit under the governing law will properly preclude the entry of summary judgment. Factual disputes that are irrelevant or unnecessary will not be counted.

477 U.S. at 247-48 (emphasis in the original and added in part). Earlier the Supreme Court defined a material fact for Rule 56 purposes as "[w]here the record taken as a whole could not lead a rational trier of fact to find for the nonmoving party, there is no `genuine issue for trial.'" Matsushita Electrical Industrial Co. v. Zenith Radio Corp., 475 U.S. 574, 587 (1986) (citations omitted).

A motion for summary judgment is to be considered after adequate time for discovery. Celotex, 477 U.S. at 326 (1986). Where there has been a reasonable opportunity for discovery, the party opposing the motion must make an affirmative showing of the need for additional discovery after the filing of a motion for summary judgment. Emmons v. McLaughlin, 874 F.2d 351, 355-57 (6th Cir. 1989). But see Routman v. Automatic Data Processing, Inc., 873 F.2d 970, 971 (6th Cir. 1989).

There is a certain framework in considering a summary judgment motion as to the required showing of the respective parties, as described by the Court in Celotex:

> Of course, a party seeking summary judgment always bears the initial responsibility of informing the district court of the basis for its motion, and identifying those portions of "the pleadings, depositions, answers to interrogatories, and admissions on file, together with

6

> the affidavits, if any," which it believes demonstrate
> the absence of a genuine issue of material fact. . . .
> [W]e find no express or implied requirement in Rule 56
> that the moving party support its motion with affidavits
> or other similar materials negating the opponent's claim.

Celotex, 477 U.S. at 323 (emphasis deleted).

As the Court of Appeals explained, "[t]he moving party bears the burden of satisfying Rule 56(c) standards." Martin v. Kelley, 803 F.2d 236, 239, n. 4 (6th Cir. 1986). The moving party's burden is to show "clearly and convincingly" the absence of any genuine issues of material fact. Sims v. Memphis Processors, Inc., 926 F.2d 524, 526 (6th Cir. 1991)(quoting Kochins v. Linden-Alimak, Inc., 799 F.2d 1128, 1133 (6th Cir. 1986)). "So long as the movant has met its initial burden of `demonstrat[ing] the absence of a genuine issue of material fact,' the nonmoving party then `must set forth specific facts showing that there is a genuine issue for trial.'" Emmons, 874 F.2d at 353 (quoting Celotex and Rule 56(e)).

Once the moving party meets its initial burden, the United States Court of Appeals for the Sixth Circuit warned that "the respondent must adduce more than a scintilla of evidence to overcome the motion [and] . . . must `present affirmative evidence in order to defeat a properly supported motion for summary judgment.'" Street v. J.C. Bradford & Co., 886 F.2d 1472, 1479 (6th Cir. 1989)(quoting Liberty Lobby). Moreover, the Court of Appeals explained that:

> The respondent must "do more than simply show that there
> is some metaphysical doubt as to the material facts."

7

> Further, "[w]here the record taken as a whole could not lead a rational trier of fact to find" for the respondent, the motion should be granted. The trial court has at least some discretion to determine whether the respondent's claim is "implausible."

Street, 886 F.2d at 1480 (citations omitted). See also Hutt v. Gibson Fiber Glass Products, 914 F.2d 790, 792 (6th Cir. 1990) ("A court deciding a motion for summary judgment must determine 'whether the evidence presents a sufficient disagreement to require submission to a jury or whether it is so one-sided that one party must prevail as a matter of law.'") (quoting Liberty Lobby).

If both parties make their respective showings, the Court then determines if the material factual dispute is genuine, applying the governing law.

> More important for present purposes, <u>summary judgment will not lie if the dispute about a material fact is "genuine," that is, if the evidence is such that a reasonable jury could return a verdict for the nonmoving party</u>.
>
> . . . .
>
> Progressing to the specific issue in this case, we are convinced that <u>the inquiry involved in a ruling on a motion for summary judgment or for a directed verdict necessarily implicates the substantive evidentiary standard of proof that would apply at the trial on the merits</u>. If the defendant in a run-of-the-mill civil case moves for summary judgment or for a directed verdict based on the lack of proof of a material fact, <u>the judge must ask himself not whether he thinks the evidence unmistakably favors one side or the other but whether a fair-minded jury could return a verdict for the plaintiff on the evidence presented</u>. The mere existence of a scintilla of evidence in support of the plaintiff's position will be insufficient; there must be evidence on which the jury could reasonably find for the plaintiff. <u>The judge's inquiry, therefore, unavoidably asks whether</u>

8

<u>reasonable jurors could find by a preponderance of the evidence that the plaintiff is entitled to a verdict -- "whether there is [evidence] upon which a jury can properly proceed to find a verdict for the party producing it, upon whom the onus of proof is imposed."</u>

Liberty Lobby, 477 U.S. at 248, 252 (citation omitted and emphasis added).

It is likewise true that:

> In ruling on [a] motion for summary judgment, the court must construe the evidence in its most favorable light in favor of the party opposing the motion and against the movant. Further, the papers supporting the movant are closely scrutinized, whereas the opponent's are indulgently treated. It has been stated that: `The purpose of the hearing on the motion for such a judgment is not to resolve factual issues. It is to determine whether there is any genuine issue of material fact in dispute. . . .'

Bohn Aluminum & Brass Corp. v. Storm King Corp., 303 F.2d 425, 427 (6th Cir. 1962) (citation omitted). As the Court of Appeals stated, "[a]ll facts and inferences to be drawn therefrom must be read in a light most favorable to the party opposing the motion." Duchon v. Cajon Co., 791 F.2d 43, 46 (6th Cir. 1986).

The Sixth Circuit further explained the District Court's role in evaluating the proof on a summary judgment motion:

> A district court is not required to speculate on which portion of the record the nonmoving party relies, nor is it obligated to wade through and search the entire record for some specific facts that might support the nonmoving party's claim. Rule 56 contemplates a limited marshalling of evidence by the nonmoving party sufficient to establish a genuine issue of material fact for trial. This marshalling of evidence, however, does not require the nonmoving party to "designate" facts by citing specific page numbers. Designate means simply "to point

9

out the location of." Webster's Third New InterNational Dictionary (1986).

> Of course, the designated portions of the record must be presented with enough specificity that the district court can readily identify the facts upon which the nonmoving party relies; but that need for specificity must be balanced against a party's need to be fairly apprised of how much specificity the district court requires. This notice can be adequately accomplished through a local court rule or a pretrial order.

InterRoyal Corp. v. Sponseller, 889 F.2d 108, 111 (6th Cir. 1989). Here, the parties have given some references to the proof upon which they rely. Local Rules 56.01(b)-(d) require a showing of undisputed and disputed facts.

In Street, the Court of Appeals discussed the trilogy of leading Supreme Court decisions, and other authorities on summary judgment and synthesized ten rules in the "new era" on summary judgment motions:

> 1. Complex cases are not necessarily inappropriate for summary judgment.
>
> 2. Cases involving state of mind issues are not necessarily inappropriate for summary judgment.
>
> 3. The movant must meet the initial burden of showing "the absence of a genuine issue of material fact" as to an essential element of the non-movant's case.
>
> 4. This burden may be met by pointing out to the court that the respondent, having had sufficient opportunity for discovery, has no evidence to support an essential element of his or her case.
>
> 5. A court should apply a federal directed verdict standard in ruling on a motion for summary judgment. The inquiry on a summary judgment motion or a directed verdict motion is the same: "whether the evidence presents a sufficient disagreement to require submission

10

to a jury or whether it is so one-sided that one party must prevail as a matter of law."

6. As on federal directed verdict motions, the "scintilla rule" applies, i.e., the respondent must adduce more than a scintilla of evidence to overcome the motion.

7. The substantive law governing the case will determine what issues of fact are material, and any heightened burden of proof required by the substantive law for an element of the respondent's case, such as proof by clear and convincing evidence, must be satisfied by the respondent.

8. The respondent cannot rely on the hope that the trier of fact will disbelieve the movant's denial of a disputed fact, but must "present affirmative evidence in order to defeat a properly supported motion for summary judgment."

9. The trial court no longer has the duty to search the entire record to establish that it is bereft of a genuine issue of material fact.

10. The trial court has more discretion than in the "old era" in evaluating the respondent's evidence. The respondent must "do more than simply show that there is some metaphysical doubt as to the material facts." Further, "[w]here the record taken as a whole could not lead a rational trier of fact to find" for the respondent, the motion should be granted. The trial court has at least some discretion to determine whether the respondent's claim is "implausible."

Street, 886 F.2d at 1479-80 (citations omitted).

The Court has distilled from these collective holdings four issues that are to be addressed upon a motion for summary judgment: (1) has the moving party "clearly and convincingly" established the absence of material facts?; (2) if so, does the plaintiff present sufficient facts to establish all the elements of the asserted claim or defense?; (3) if factual support is presented by the nonmoving party, are those facts sufficiently plausible to support

11

a jury verdict or judgment under the applicable law?; and (4) are there any genuine factual issues with respect to those material facts under the governing law?

Section 1983 provides a remedy against any person who, under color of state law, deprives another of rights protected by the United States Constitution. There are two essential elements to an action under § 1983: (1) whether the conduct complained of was committed by a person acting under color of state law; and (2) whether the conduct deprived a person of rights, privileges, or immunities secured by the Constitution or laws of the United States. 42 U.S.C. § 1983.

## A. CLYDE WEAVER AND SEAN BRANTLEY

Plaintiff alleges that Weaver and Brantley used excessive force against him by slamming the pie flap on his finger in violation of the Eighth Amendment.

The Eighth Amendment prohibits the "'unnecessary and wanton infliction of pain.'" Whitley v. Albers, 475 U.S. 312, 319 (1986) (quoting Ingraham v. Wright, 430 U.S. 651, 670 (1977) (citation and internal quotation marks omitted)). An Eighth Amendment claim for excessive force has both a subjective and an objective component. Farmer v. Brennan, 511 U.S. 825, 834 (1994). In situations where force is used in response to a prison disturbance, the subjective component asks "'whether force was applied in a good faith effort to maintain or restore discipline or maliciously and sadistically

12

for the very purpose of causing harm.'" Whitley, 475 U.S. at 320-21 (citation omitted).

"Whether the prison disturbance is a riot or a lesser disruption, corrections officers must balance the need 'to maintain or restore discipline' through force against the risk of injury to inmates. Both situations may require prison officials to act quickly and decisively." Hudson v. McMillian, 503 U.S. 1, 6 (1992). "'[S]uch factors as the need for the application of force, the relationship between the need and the amount of force that was used, [and] the extent of injury inflicted,' are relevant [in determining the manner in which the force was applied]." Whitley, 475 U.S. at 321 (citation omitted).

Other relevant factors include "the extent of the threat to the safety of staff and inmates, as reasonably perceived by the responsible officials on the basis of the facts known to them, and any efforts made to temper the severity of a forceful response." Id. "From such considerations inferences may be drawn as to whether the use of force could plausibly have been thought necessary, or instead evinced such wantonness with respect to the unjustified infliction of harm as is tantamount to a knowing willingness that it occur." Id. Thus, "[t]he absence of serious injury is . . . relevant to the Eighth Amendment inquiry, but does not end it." Hudson, 503 U.S. at 7.

13

The objective component of an Eighth Amendment claim requires that the pain be serious. Moore v. Holbrook, 2 F.3d 697, 700 (6th Cir. 1993). The objective component is contextual and is responsive to "contemporary standards of decency." Hudson, 503 U.S. at 8 (citation and internal quotation marks omitted). In the excessive force context, regardless of any significant injury "[w]hen prison officials maliciously and sadistically use force to cause harm, contemporary standards of decency always are violated. . . . Otherwise, the Eighth Amendment would permit any physical punishment, no matter how diabolic or inhuman, inflicting less than some arbitrary quantity of injury." Id. at 9 (citation omitted).

To be sure, not "every malevolent touch by a prison guard gives rise to a federal cause of action." Id.; see id. (quoting Johnson v. Glick, 481 F.2d 1028, 1033 (2d Cir. 1973) ("Not every push or shove, even if it may later seem unnecessary in the peace of a judge's chambers, violates a prisoner's constitutional rights.")). The Eighth Amendment recognizes "*de minimis* uses of physical force, provided that the use of force is not of a sort 'repugnant to the conscience of mankind.'" Id. at 9-10 (citation and internal quotation marks omitted).

Given his continued treatment, the Court finds that Plaintiff has presented sufficient evidence that he suffered "serious pain" to his finger. The extent of his injury is unclear, but Defendants have not submitted any medical proof challenging Plaintiff's claim.

14

Construing the facts in the light most favorable to the plaintiff, the Court finds that Plaintiff has satisfied the objective prong of his excessive force claim at this stage in the litigation.

The Court also finds a genuine issue of material fact as to whether force was applied in a good faith effort to maintain or restore discipline or maliciously and sadistically for the very purpose of causing harm. Defendants contend that Plaintiff was being disruptive and had a history of throwing substances through the pie flap. Yet, Defendant asserts that he apologized to Boyd for his use of profanity, indicating that he had calmed down, that he was not sticking his arms through the pie flap, and that he did not receive or hear a warning from Brantley before the flap was closed on his finger. Further, Plaintiff disputes that he had a history of throwing any objects or liquid through the pie flap prior to July 19, 2007. Plaintiff cites an incident report of him throwing Kool Aid on Weaver on July 26, 2007. Defendants did not submit any incident reports supporting their contention as to Plaintiff's prior history.

In Nelson v. Sharp, No. 96-2149, 182 F.3d 918, 1999 WL 520751, (6th Cir. July 14, 1999), Plaintiff Nelson alleged that because he refused to remove his hand from the pie flap Defendant Sharp purposely slammed the pie flap on his hand and leaned on it. The Sixth Circuit stated:

> Sharp defends on the grounds that the prison disciplinary
> system correctly held that Nelson had refused a direct

15

order to remove his hand from the food slot, and therefore allowing Nelson's claim to proceed would be an improper relitigation of his disciplinary conviction. However, the question of the degree of force used by the prison guard is analytically distinct from the question of whether Sharp violated prison rules by keeping his hand in the food slot and thus preventing Sharp from properly closing the food slot. For example, Nelson's violation presumably would not have justified the guard in hacking off the offending hand with an ax, or spraying the cell with sub-machine gun fire through the food slot. Although Nelson's actions were clearly not of such an outrageous character, at this stage it is not beyond the realm of possibility that Sharp can prove that Nelson violated his Eighth Amendment rights by slamming the food slot door on his hand in such a manner as to inflict unnecessary pain in a wanton manner, not justified by prison necessity or the degree of violation.

Id. at *2 (citations omitted).

The Court concludes Plaintiff's claim is similar to the claim in Nelson. Because there are factual disputes, Brantley's and Weaver's motion for summary judgment should be denied.

### B. CHERRY LINDAMOOD

Plaintiff alleges a failure to train claim against Lindamood. However, liability for failure to train "attaches to a municipality rather than to an individual." Caldwell v. Moore, 968 F.2d 595, 600 (6th Cir. 1992). A private correctional corporation under contract with a state is deemed to be acting under color of law. Skelton v. Pri-Cor, Inc., 963 F.2d 100, 102 (6th Cir. 1991). To prevail against CCA, Plaintiff must show that inadequate training represented a policy and that the need for better training was so obvious and the inadequacy so likely to result in a violation of constitutional rights, that the private entity can be said to have

16

been deliberately indifferent to the need. City of Canton v. Harris, 489 U.S. 378, 387-88 (1989).

Plaintiff has not presented any proof about lack of training or other incidents to impose liability on CCA. Accordingly, this claim lacks merit.

To the extent that Plaintiff is alleging that Lindamood failed to supervise Weaver and Brantley, this claim also fails. In asserting a § 1983 action against a supervisory official, a plaintiff must show that the defendant was either directly or personally involved in the alleged unconstitutional activity. Dunn v. State of Tennessee, 697 F.2d 121, 128 (6th Cir. 1982). "What is required is a causal connection between the misconduct complained of and the official sued." Id. Liability under § 1983 must be based on more than *respondeat superior* or the right to control employees. Shehee v. Luttrell, 199 F.3d 295, 300 (6th Cir. 1999).

> [A] supervisory official's failure to supervise, control or train the offending individual is not actionable unless the supervisor "either encouraged the specific incident of misconduct or in some other way directly participated in it. At a minimum a plaintiff must show that the official at least implicitly authorized, approved, or knowingly acquiesced in the unconstitutional conduct of the offending officers."

Id. at 300 (citations omitted).

Plaintiff does not present any evidence that Lindamood had any direct or personal involvement in authorizing, approving, or knowingly acquiescing in any alleged unconstitutional conduct. Nor

17

is there anything in the record that indicates otherwise. Accordingly, Plaintiff's claim is without merit.

## C. OFFICIAL CAPACITY

Lastly, the Court notes that Plaintiff has also sued Weaver and Brantley in their official capacities, which is in essence a suit against CCA, of which they are agents. <u>Kentucky v. Graham</u>, 473 U.S. 159, 166 (1985). Thus, Plaintiff must show that CCA's "'policy or custom' played a part in the violation of federal law." <u>Id</u>. Plaintiff has failed to do so. Accordingly, Plaintiff's claims against Weaver and Brantley in their official capacities are dismissed.

## III. CONCLUSION

Accordingly, Defendants' motion for summary judgment (Docket Entry No. 20) should be granted as to Cherry Lindamood and Clyde Weaver and Sean Brantley in their official capacities, but should otherwise be denied consistent with this opinion.

An appropriate Order is filed herewith.

**ENTERED** this the 28th day of January, 2009.

WILLIAM J. HAYNES, JR.
United States District Judge